# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2080

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher John McGee

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: December 14, 2017
Filed: May 18, 2018

_____

Before WOLLMAN, LOKEN, and MURPHY,[*] Circuit Judges.

_____

LOKEN, Circuit Judge.

Christopher McGee pleaded guilty to two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924 (a)(2). The Presentence Investigation Report (PSR) determined a base offense level of 22, a total

_____

[*]This opinion is being filed by Judge Loken and Judge Wollman pursuant to 8th Cir. Rule 47E.

offense level of 31, and criminal history category VI, resulting in an advisory guidelines range of 188-235 months imprisonment. McGee filed numerous objections. After an extended evidentiary hearing, the district court[1] overruled McGee's objections. The court varied downward to criminal history category V, which reduced the guidelines range to 168 to 210 months, and sentenced McGee to 168 months in prison. McGee appeals the sentence, arguing the district court erred in determining the base offense level, in imposing three enhancements, and in granting a continuance of the sentencing hearing. Reviewing the district court's factual findings for clear error, and its interpretation and application of the guidelines *de novo*, we affirm. United States v. Lyons, 556 F.3d 703, 706-07 (8th Cir. 2009) (standard of review). We begin with the enhancement issues because they involve facts underlying McGee's first count of conviction.

## I. The Enhancement Issues

McGee pleaded guilty to unlawful possession on March 21 and May 20, 2016. The district court imposed three sentencing guidelines enhancements based on findings of what occurred during the March 21 incident -- a two-level enhancement because the offense involved three or more firearms, U.S.S.G. § 2K2.1(b)(1)(A); a two-level enhancement because McGee used a minor to aid in committing the offense, § 3B1.4; and a four-level enhancement because he committed the offense in connection with another felony offense, § 2K2.1(b)(6)(B).

The district court held its sentencing hearing on December 13, 2016. Amber Andrews testified that McGee and I.C., a teenage minor, came to her residence on March 21, 2016, to get money in exchange for returning stolen tattoo equipment. When they arrived, both had guns. McGee did not bring the equipment. He told I.C.

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

to look in the kitchen for the money. I.C. did not find money and asked McGee if he should shoot Andrews. McGee said no. Andrews had called the police to report the theft of her tattoo equipment. As the police were arriving, McGee gave his gun to I.C. and told him to hide it. McGee then got Andrews's gun from a cupboard and sat on a couch next to Andrews, holding the gun to her back. Officer John O'Brien testified that the police found a Jimenez firearm in the sofa cushion near where McGee was seated when they arrived, and a Taurus nine millimeter pistol and a .22 caliber revolver elsewhere in the home. McGee objected to the PSR finding that he possessed the Jimenez. Officer O'Brien testified that I.C. told officers he accompanied McGee to Andrews's residence, knew both were armed, and believed they went there for drugs or money.

Expressly crediting Andrews's testimony, the district court found that McGee's first count of conviction, the March 21 incident, involved at least three firearms, that McGee used a minor, I.C., to further commission and avoid detection of the offense, and that he possessed a weapon in connection with another felony offense, assaulting Andrews while displaying a dangerous weapon. The court granted a downward variance and sentenced McGee to 168 months in prison; he appealed. With the appeal pending, the government disclosed that Andrews was under investigation and had been interviewed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in September 2016. We vacated the sentence and granted the parties' joint motion to remand to afford McGee an opportunity to cross-examine Andrews regarding the recorded ATF interview.

The district court ordered a resentencing hearing for March 7, 2017. When Andrews did not appear on March 7, the district court granted the government's request for a brief continuance, advising that if Andrews did not appear at the rescheduled hearing, her prior testimony would likely be struck and the court would recalculate McGee's sentence in light of the record without that testimony. The government subpoenaed Andrews, and she appeared at the rescheduled hearing on

April 19, 2017. She was vigorously cross-examined regarding inconsistencies in her testimony to the grand jury in June 2016, statements she made in the ATF interview in September, and her testimony at the December sentencing hearing.

Reviewing this additional evidence, the district court again found that Andrews's testimony regarding McGee's March 21 offense was credible. The court recognized that Andrews may not have been entirely truthful at the ATF interview, when she and a man who was living with her were potential targets of the ATF investigation. However, the court found Andrews's testimony before the grand jury regarding the events on March 21 was largely consistent with her testimony at the December sentencing. The court again found that this testimony was credible and warranted imposing the three disputed enhancements. The court again imposed a sentence of 168 months in prison, based on a total offense level of 31 and a downward variance to criminal history category V.

On appeal, McGee argues the district court clearly erred in imposing the enhancements because "Andrews's testimony was inconsistent and unreliable [and] the issues with [her] testimony establish the district court clearly erred by relying on her testimony." Regarding the enhancement for three or more firearms, McGee argues the court erred in finding that he possessed the Jimenez firearm, noting that at sentencing, Andrews testified that McGee retrieved the Jimenez firearm from her bedroom, whereas she testified to the grand jury that McGee retrieved it from her kitchen. Regarding the enhancement for use of a minor in committing the offense, McGee argues that Andrews's testimony to the grand jury regarding McGee's direction and control over I.C. was different than her testimony at sentencing. Regarding the enhancement for another felony offense, McGee argues that Andrews's testimony that he held a gun to her back on the sofa is incredible. McGee also notes that Andrews used the incorrect address when purchasing a firearm, lied when she was questioned by the ATF regarding her purchases of firearms, and has two prior

theft convictions.  He concludes that these inconsistencies and the lack of other corroborating evidence render her testimony incredible.

We review the district court's factual findings for clear error, but "[a] district court's findings with respect to witness credibility are almost never clear error given the district court's comparative advantage at evaluating credibility. . . . Thus, a district court's credibility determinations are virtually unreviewable on appeal." United States v. Bridges, 569 F.3d 374, 377-78 (8th Cir. 2009).  Here, the district court observed Andrews testify at length at two sentencing hearings.  Her minor inconsistencies in describing events relevant to the enhancements, and her dubious statements to the ATF interviewer regarding unrelated issues the ATF was investigating, do not undermine the district court's careful finding that Andrews credibly testified to facts warranting the three enhancements.  There was no clear error in finding Andrews credible and imposing the enhancements.

## II.  A Procedural Issue

Andrews did not appear at the March 7 resentencing hearing to be cross-examined regarding newly discovered evidence, the recorded ATF interview.  The government requested a continuance, explaining that it had not issued a subpoena because Andrews said she would be at the hearing.  The court asked for McGee's position; defense counsel stated: "I guess I'll leave it up to the court."  The district court granted the government a continuance to subpoena Andrews for the resentencing hearing.  The court did not fault the government for Andrews's failure to appear, noted it was important that the defense have another opportunity to cross examine her, and concluded that giving the government one more opportunity to get Andrews to the hearing was preferable to the "extreme step" of striking her prior testimony.  Defense counsel did not object to this ruling.

On appeal, McGee argues the district court abused its discretion in granting the government's request to continue. This issue was waived. See generally United States v. Olano, 507 U.S. 725, 733 (1993). And even if it was merely forfeited and therefore subject to plain error review, the district court did not abuse its discretion, much less commit plain error, in granting the government's motion for a short continuance to secure the attendance of an important witness. See United States v. Johnson, 535 F.3d 892, 898 (8th Cir. 2008). Nor were McGee's substantial rights affected, as Andrews appeared at the next hearing, affording McGee the opportunity for additional cross examination the parties requested and our remand contemplated.

### III. The Base Offense Level Issue

The base offense level for an unlawful firearm possession offense is 22 if the offense involves a firearm described in U.S.S.G. § 2K2.1(a)(3)(i) or (ii) *and* the defendant has a prior felony conviction "of either a crime of violence or a controlled substance offense." Crime of violence is defined to include any offense punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1), commonly referred to as the force clause. At sentencing, the government introduced a criminal Complaint and a Plea and Sentence record establishing that in November 2012 McGee pleaded guilty to Assault While Displaying a Dangerous Weapon in violation of Iowa Code Sections 708.1 & 708.2(3). Though an aggravated misdemeanor under Iowa law, this was a felony offense for purposes of § 4B1.2 of the Guidelines because it was punishable by more than a year in prison. See Iowa Code §§ 708.2(3), 903.1(2). The district court ruled that a conviction for Assault While Displaying a Dangerous Weapon in violation of Iowa Code Sections 708.1 & 708.2(3) was a violent felony under the force clause and increased McGee's base offense level to 22. We review that determination *de novo*. United States v. Harrison, 809 F.3d 420, 425 (8th Cir. 2015).

In determining whether an offense falls within the force clause, we focus on the generic elements of the offense, not on the facts underlying the defendant's prior conviction. If the statutory *elements* are listed in the disjunctive, we use a modified categorical approach to determine which statutory phrase was the basis for the conviction by consulting a limited universe of trial records such as charging documents, plea agreements and verdict forms. See, e.g., United States v. Garcia-Longoria, 819 F.3d 1063, 1065 (8th Cir. 2016). However, the modified categorical approach may not be used "when a statute, instead of merely laying out a crime's elements, lists alternative means of fulfilling one (or more) of them." Mathis v. United States, 136 S. Ct. 2243, 2253 (2016). Under Mathis, if one of the alternative means does not fall within the force clause, the offense of conviction was not a crime of violence. Id. at 2257.

The Iowa statutes McGee violated provide:

**708.1. Assault defined**

An assault as defined . . . is a general intent crime. A person commits an assault when, without justification, the person does any of the following:

1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.[2]

## 708.2. Penalties for assault

\* \* \* \* \*

3. A person who commits an assault, as defined in § 708.1, and uses or displays a dangerous weapon in connection with the assault, is guilty of an aggravated misdemeanor.

In United States v. Maid, 772 F.3d 1118 (8th Cir. 2014), and again in United States v. Boots, 816 F.3d 971 (8th Cir. 2016), we held that convictions for Assault While Displaying a Dangerous Weapon under Iowa Code §§ 708.1 & 708.2(3) "categorically qualified as a crime of violence under U.S.S.G. § 4B1.2(a)(1)." 816 F.3d at 974. We explained that intentionally pointing a firearm at another person and displaying a dangerous weapon toward another in a threatening manner constitute, categorically, "a 'threatened use of physical force' under USSG § 4B1.2(a)(1)." Maid, 772 F.3d at 1121.

McGee contends that Boots and Maid do not control because those pre-Mathis decisions treated § 708.1 as divisible in concluding that § 708.1(3) categorically qualifies as a crime of violence, whereas Mathis established that the subsections of § 708.1 are alternative means for committing the crime of assault, and subsections (1) and (2) include offense conduct that does not require use of violent force. We disagree because the argument ignores § 708.2(3), an essential part of McGee's conviction for the offense of Assault While Displaying a Dangerous Weapon. The elements of the offense are the use or display of a dangerous weapon, § 708.2(3), in committing an assault violation of § 708.1. Even if the subsections of § 708.1 are

---

[2]In an amendment effective July 1, 2013, § 708.1(1)-(3) was renumbered, without substantive change, to § 708.2(a)-(c).

means rather than elements under Mathis, the elements of this offense involve the threatened use of violent force because "[i]t goes without saying that displaying an operational weapon before another in an angry or threatening manner qualifies as a threatened use of physical force." United States v. Pulliam, 566 F.3d 784, 788 (8th Cir. 2009). The Court in Mathis explained that "[i]f statutory alternatives carry different punishments, then . . . they must be elements." 136 S. Ct. at 2256. Here, § 708.2(3) imposes an increased punishment when a dangerous weapon is used or displayed in committing an assault. Thus, Boots and Maid remain controlling authorities, and the district court correctly concluded that McGee's prior conviction for Assault While Displaying a Dangerous Weapon was a crime of violence resulting in a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3).

## IV. Harmless Error

After sentencing McGee to 168 months in prison at the initial sentencing, and again at the resentencing, the district court stated:

> I do want to note that I've obviously had to make a lot of findings today under the United States Sentencing Guidelines. The 168 month sentence that I came up with is -- I don't do this in every case, but I do find it is a 3553(a) sentence that I ultimately would have arrived at regardless of the different offense level increases and criminal history scoring for all of the reasons I previously announced; based on Mr. McGee's history and the nature and circumstances of the offense. So even if I was wrong with regard to any of the scoring issues that we've talked about here today, I ultimately find that a sentence of 168 is sufficient, but not greater than necessary, under Section 3553(a).

In United States v. Dace, 842 F.3d 1067, 1069 (8th Cir. 2016), we held that "when a district court's detailed explanation for the sentence imposed makes 'clear that the judge based the sentence he or she selected on factors independent of the Guidelines,' the error may be harmless" (quoting United States v. Molina-Martinez, 136 S. Ct.

1338, 1346-47 (2016)).  On this basis, we ruled that the court's error in determining that a prior conviction was a crime of violence was harmless and affirmed a sentence that included an *upward* variance.  Id. at 1070.  We applied the same principle in affirming a statutory maximum sentence in United States v. McGrew, 846 F.3d 277 (8th Cir. 2017), a case where the defendant argued, as in this case, that the district court "misapplied several of the enhancements and selected the wrong base offense level."  Id. at 279-80.

McGee argues that these decisions do not apply because the district court merely made "blanket statements [that] are insufficient to establish harmless error." We have noted that, in some cases, "a blanket identical alternative sentence" does not provide "enough reasoning for meaningful appellate review of the sentence applied." Id. at 282 (quotation omitted).  But our thorough review of the extensive sentencing record in this case persuades us that the district court did far more than toss off a blanket alternative sentence.  We therefore conclude, particularly with respect to the two-level increase in the base offense level for McGee's prior aggravated assault conviction, that any error was harmless.

We affirm the judgment of the district court.

_____